**AFFIRM in part, REVERSE in part, and REMAND; Opinion Filed July 9, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00454-CV**

**GAY ACEDO, R.N., JENNIFER BERTAUT, R.N., ABNOR SINDHU, R.N., DEBRA STUART, R.N., JACKIE LARAN, R.N., ISAAC DADA, EMMANUEL IWUOHA, BRITT BERRETT, PH.D., FACHE, AND SUSAN HOLLINGSWORTH, R.N., Appellants**
**V.**
**ADRIANE SPRINGS, INDIVIDUALLY AND AS NEXT FRIEND OF RON SPRINGS, Appellee**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 08-00671-A**

**MEMORANDUM OPINION**
Before Justices Moseley, Fillmore, and Myers
Opinion by Justice Moseley

Before the Court is a second interlocutory appeal concerning the health care liability claims asserted by appellee Adriane Springs. This appeal follows the trial court's denial of appellants' motion to dismiss appellee's claims pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code. In a single issue on appeal, appellants argue the trial court abused its discretion by denying their motion to dismiss because a supplemental expert report provided by appellee does not cure the deficiencies that this Court identified in a prior opinion.

The background and facts of the case are well-known to the parties; thus, we do not recite them here in detail. Because all dispositive issues are settled in law, we issue this memorandum

opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm the trial court's order in part, reverse the trial court's order in part, and remand the case for further proceedings consistent with this opinion.

We adopt the Court's prior recitation of the factual background of this case, *see Hollingsworth v. Springs*, 353 S.W.3d 506, 511-12 (Tex. App.—Dallas 2011, no pet.), and provide only the facts necessary to resolve the issues in this appeal.

Appellee's husband, Ron Springs (Springs), allegedly suffered injuries and died while receiving medical treatment and surgical care at Medical City Dallas Hospital. Appellee sued appellants and others alleging their negligence caused Springs's injuries and subsequent death. To comply with chapter 74 of the civil practice and remedies code, appellee served the appellants with reports from three experts: Scott Groudine, M.D., an anesthesiologist, Charles M. Brosseau, Jr., FACHE, a consultant on health care administration, and Yvette Rosenthal, R.N., a perioperative nurse.

When this case originally came before the Court, we concluded Groudine's March 4, 2010 expert report (Groudine's Report) was deficient because it was "conclusory in its causation opinions concerning" specific claims against eight defendants.[1] *Id.* at 524. We remanded the case and instructed the trial court to decide whether to grant a thirty-day extension to cure deficiencies identified in the opinion. *Id.* The trial court granted the extension and appellee filed a supplemental expert report, Groudine's December 14, 2011 report (Groudine's Supplemental Report). Appellants filed objections to Groudine's Supplemental Report and again moved to dismiss. The trial court overruled the objections and denied the motion. On appeal, appellants argue the trial court abused its discretion by denying their motion to dismiss because Groudine's Supplemental Report did not cure the deficiencies we identified in *Hollingsworth*.

---

[1] Our prior opinion stated: "The March 4, 2010 Groudine report is conclusory in its causation opinions concerning claims against: Administrative Nurses [Susan] Hollingsworth, [Jennifer] Bertaut, and [Debra] Stuart; anesthesia technicians [Abnor] Sindhu, [Isaac] Dada, and [Emmanuel] Iwuoha; and [Jackie] Laran and [Gay] Acedo (only chain of command and call for help claims). Accordingly, we conclude the trial court abused its discretion in denying those parties' motions to dismiss on that ground." *Hollingsworth*, 353 S.W.3d at 524.

–2–

We review a trial court's ruling on the adequacy of an expert report for an abuse of discretion. *See id.* at 512 (citing *Am. Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001)). A trial court abuses its discretion if it acts without reference to any guiding rules and principles, if it acts in an arbitrary and unreasonable fashion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

"The purpose of the expert report requirement is to deter frivolous claims, not to dispose of claims regardless of their merits." *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011) (citation omitted); *see also Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012). A Chapter 74 expert report must provide:

> a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West 2011). The report does not need to "marshal all the plaintiff's proof." *Id.*; *see also Hollingsworth*, 353 S.W.3d at 513.

A court shall grant a motion challenging the adequacy of a report only if the report does not represent an objective good faith effort to comply with the statutory definition of "expert report." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*). To constitute a good faith effort, the report must provide enough information to meet two requirements: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Hollingsworth*, 353 S.W.3d at 513 (citing *Bowie Memorial Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002)).

A report does not fulfill the statute's requirement if it merely states the expert's conclusions or if it omits any of the statutory requirements. *Id.* (citing *Palacios*, 46 S.W.3d at 879). The report must contain sufficiently specific information to demonstrate causation beyond mere conjecture. *Fortner v. Hosp. of the Southwest, LLP*, 399 S.W.3d 373 (Tex. App.—Dallas

–3–

Apr. 5, 2013, no pet.). A court will not "fill gaps" in an expert report by drawing inferences or guessing what the expert likely meant or intended. *See Wright*, 79 S.W.3d at 53. Instead, the expert must explain the basis for his statements and link his conclusions to the facts. *Id.* at 52.

**Administrative Personnel's Motion to Dismiss**

Appellee alleges that appellants Britt Berrett, Susan Hollingsworth, Jennifer Bertaut, and Debra Stuart breached their administrative duties and the breaches proximately caused injury to Springs.[2] When this Court initially examined Groudine's Report on appellee's claims against appellants Berrett, Hollingsworth, Bertaut, and Stuart, we stated:

> Groudine was required to link these failed management responsibilities to Springs's injuries; his report was required to explain how the administrative breaches described proximately caused Springs's injuries. . . . [W]e conclude that Groudine's March 4, 2010 report, standing alone, does not adequately explain why there would have been a different and better result if the hospital's management personnel had met their responsibilities. By way of example, Groudine does not explain here why Springs's injury would have been avoided if the anesthesiologist had not begun delivery of anesthesia until the surgeon was present, as the hospital's procedure required. We conclude Groudine's report is conclusory in its attempts to connect the administrative negligence identified by Brosseau with Springs's brain injury.

*Hollingsworth*, 353 S.W.3d at 518-19.

Groudine's Supplemental Report, filed after remand, quotes extensively from Brosseau's expert's report, and then states:

> These failures specifically identified by Mr. Brosseau and Ms. Rosenthal were, in all reasonable medical probability, a proximate cause of Mr. Springs' hypoxic brain injury and subsequent death. As I indicated in previous reports, no one ever bothered to get the previous surgery records on Mr. Springs available at that institution. Accordingly, important information available was not elicited or obtained. The problem with that is that as a direct and foreseeable consequence, the procedure was started in an unsafe manner without the necessary equipment and personnel available to ensure that anesthesia started appropriately or even that the choice of anesthesia was correct, or that the personnel were not able to respond appropriately when Mr. Springs' airway was lost in order to avoid his hypoxic brain damage.

---

[2] The allegations are more fully explained in the *Hollingsworth* opinion. *See Hollingsworth*, 353 S.W.3d at 514.

Again, after extensively quoting more language from Brosseau's expert's report, Groudine's Supplemental Report states:

> As a direct and foreseeable consequence of failing to do an appropriate assessment or to at least ensure one was done by someone else (even if the chain of command had to be initiated to do so) and also failing to gather important information available, a dangerous procedure was undertaken without the appropriate personnel to respond in order to keep Mr. Springs out of harm's way. These failures specifically identified by Mr. Brosseau and Ms. Rosenthal were, in all reasonable medical probability, a proximate cause of Mr. Springs' hypoxic brain injury and subsequent death.

Finally, the report quotes more language from Brosseau's report and concludes:

> These administrative failures specifically identified by Mr. Brosseau and Ms. Rosenthal were, in all reasonable medical probability, a proximate cause of Mr. Springs' hypoxic brain injury and subsequent death because they were a direct and foreseeable cause or substantial contributing factor to the clinical failures that lead [sic] to Mr. Springs' arrest and subsequent hypoxic brain damage due to the fact that adequate personnel were not immediately available to appropriately respond.

Groudine's Supplemental Report does not remedy the deficiencies discussed in our *Hollingsworth* opinion. Groudine does not link the alleged failures by administrative personnel to Springs's injuries; he does not explain how the alleged administrative breaches proximately caused Springs's injuries. *See Hollingsworth*, 353 S.W.3d at 518-19. Further, Groudine's Supplemental Report does not explain why a different, better result would have been achieved if the hospital's management had met their responsibilities. *See Hollingsworth*, 353 S.W.3d at 519. Instead, his report remains conclusory in its attempts to connect the alleged administrative negligence with Springs's injury.

We conclude the trial court erred by denying appellants' motion to dismiss the claims against appellants Berrett, Hollingsworth, Bertaut, and Stuart, and we sustain appellants' sole issue to this extent.

**Chain of Command and "Call for Help" Claims**

Appellee alleges that appellants Jackie Laran and Gay Acedo, both nurses, were negligent by "[f]ailing to initiate the chain of command when Dr. Abraham [the anesthesiologist] started the procedure with only Ms. Acedo present, that is, without the surgeon and other personnel present," and by "[f]ailing to timely call for help with the failed intubation." In *Hollingsworth*, the Court concluded that Groudine's Report was insufficient with respect to these claims because: he did not opine that the nurses' failures to solicit assistance when problems arose in the operating room were the proximate cause of Springs's injuries; he did not address what would have been the better outcome if help had been called; and he did not explain what actions would have resulted from a call for help (or initiating the chain of command) that would have resulted in awakening Springs. *Id.* at 523.

Groudine's Supplemental Report states:

As to the chain of command, call for help, and failure of the alarms to sound, each was, in all reasonable medical probability, a proximate cause of Mr. Springs' hypoxic brain injury and subsequent death because each was a contributing factor to the unfortunate results obtained for Mr. Springs in this case. . . . Specifically, at the beginning of the procedure, without appropriate help in the room, Mr. Springs had been put to sleep with 200 mg of propofol. At that time, ventilating Mr. Springs was possible, but difficult. Had the propofol been allowed to re-distribute, it would not have taken Mr. Springs long to wake up and to be able to control ventilation on his own. With a high risk difficult to ventilate patient, had the chain of command been initiated and help been called, additional personnel, including the surgeon and others, would have been available to provide input and assistance. More likely than not had that occurred, a discussion would have taken place that would have avoided the administration of the neuromuscular blocking agent, rocuronium. Had the chain of command been initiated and had help been called, and the decision made to paralyze Mr. Springs, more likely than not there would have been additional anesthesia personnel and specialized intubation equipment available to ensure that Mr. Springs could, in fact, be intubated once paralyzed. As a natural and continuous consequence of failing to initiate the chain of command when Dr. Abraham started the procedure with only the circulating nurse and scrub nurse present, there was certainly time to get the necessary personnel and equipment in the operating room . . . More likely than not, had the chain of command been initiated, the rocuronium would not have been administered. Had it not been administered, Mr. Springs would not have been paralyzed and would not have suffered the hypoxic brain injury. It was

paralyzing Mr. Springs and then the failure of Dr. Abraham to be able to ventilate or establish an airway that led to the hypoxic insult to his brain, causing permanent brain injury. Further, had there been the additional help and equipment in the room in order to establish an airway, if the neuromuscular blocking agent was administered, as it was here, more likely than not the airway would have been established more quickly. Establishing this airway from the chart appears to have taken just under one-half hour. These specific failures were, in all reasonable medical probability, a proximate cause of Mr. Springs' hypoxic brain injury and subsequent death.

Groudine's Supplemental Report adequately links Laran's and Acedo's alleged conduct to the alleged harm. Addressing the deficiencies raised in the *Hollingsworth* opinion, Groudine's Supplemental Report states that the nurses' failures to initiate the chain of command and call for help proximately caused the alleged injury to Springs and his death. Groudine explains that if the chain of command had been initiated and help had been called, additional personnel would have been available to provide assistance and input and, as a result, the rocuronium likely would not have been administered, Springs would not have been paralyzed, and he would not have suffered the hypoxic brain injury. Even if the rocuronium was administered, additional specialized personnel and equipment would have ensured Springs was successfully intubated after he was paralyzed. Later in his opinion, Groudine explains that it took just under one-half hour to establish Springs's airway and "hypoxemia ensues the insult will continue and worsen until ventilation is re-established or until the patient dies. In this case, the injury to Mr. Springs' brain worsened over time until an airway was re-established."

Groudine's reports sufficiently inform appellants of the specific conduct that appellee calls into question and provides a basis for the trial court to conclude that appellee's claims that appellants Laran and Acedo were negligent by "[f]ailing to initiate the chain of command when Dr. Abraham started the procedure with only Ms. Acedo present, that is, without the surgeon and other personnel present," and by "[f]ailing to timely call for help with the failed intubation" have merit. *See Wright,* 79 S.W.3d at 52; *Hollingsworth*, 353 S.W.3d at 513. We conclude the trial

court did not abuse its discretion by denying appellants' motion to dismiss as to these claims. We overrule appellants' sole issue to this extent.

## Anesthesia Technicians' Motion to Dismiss

Appellee alleged that appellants Abnor Sindhu,[3] Isaac Dada, and Emmanuel Iwuoha, all anesthesia technicians, failed to assure the alarms in the anesthesia circuit were properly functioning before the attempted induction, or if the alarms were checked, then the alarms were turned off or disabled. After determining Groudine was qualified to give a standard of care opinion regarding the responsibility of the anesthesia technicians in the operating room, the Court concluded Groudine's Report was conclusory and deficient:

> The question is whether Groudine's opinions have adequately linked the conduct he has identified as necessary—properly checking the workings of the anesthesia circuit—with Springs's injuries. The opinion does not explain how the failure of the alarms can be tied to the brain injury. We cannot infer what the effect of the alarms working would have been or what the response to the alarms would have been; we cannot infer how the alarms, or the response to them, would have led to a better outcome for the patient. The expert's opinion must include these links to his conclusion. Because Groudine has not explained these links, we conclude his report is conclusory and, therefore, deficient on this theory of negligence.

*Hollingsworth*, 353 S.W.3d at 520-21 (internal citation omitted).

Groudine's Supplemental Report addresses the deficiencies we identified. Groudine's Supplemental Report states that "the chain of command, call for help, and failure of the alarms to sound, each was, in all reasonable medical probability, a proximate cause of Mr. Springs' hypoxic brain injury and subsequent death because each was a contributing factor." Although this conclusory statement, standing alone, may be insufficient, the Supplemental Report continues to discuss issues related to the chain of command and call for help allegations:

> Another way to "call for help" is to make sure the alarms are functioning prior to the initiation of a procedure. The failure of the alarms contributes to this delay in responding to emergency situations. Delay is particularly significant when the

---

[3]As noted in the *Hollingsworth* opinion, appellants assert Sindhu is a nurse and not an anesthesia technician. We do not make factual findings to determine Sindhu's proper classification. *See Hollingsworth*, 353 S.W.3d at 519 n.8.

patient is hypoxic. As indicated, it took just under one-half hour to establish the airway in this case. When the airway is lost, and hypoxemia ensues the insult will continue and worsen until ventilation is re-established or until the patient dies. In this case, the injury to Mr. Springs' brain worsened over time until an airway was re-established. Had the alarms sounded, the potential danger to Mr. Springs' life and brain would have been identified earlier and announced to everyone in the room, everyone's attention would have focused on this life threatening emergency earlier and the amount of time needed to re-establish the airway would have been decreased, lessening and possibly avoiding entirely Mr. Springs' hypoxic induced brain injury and his subsequent death. The failure of the alarms – a mechanical "call for help" system – was a contributing factor to this delay and was, in all reasonable medical probability, a proximate cause of Mr. Springs' hypoxic brain injury and subsequent death.

Read together, Groudine's reports are sufficient to inform the appellants of the specific conduct that appellee has called into question and provide a basis for the trial court to conclude appellee's claims have merit. *See Wright,* 79 S.W.3d at 52; *Hollingsworth*, 353 S.W.3d at 513. Groudine's Supplemental Report explains how the anesthesia technicians' alleged actions caused injury to Springs; he states that Springs's injury became worse until the airway was re-established, and because the alarms were not sounded, the time to identify the problem, focus attention on it, and re-establish the airway was increased.[4] We conclude Groudine's reports constitute a good faith effort to provide a fair summary of his opinions on causation as to these claims, s*ee Scoresby*, 346 S.W.3d at 549 (citing TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6)), and the trial court did not abuse its discretion by concluding Groudine's reports sufficiently address the claims against the anesthesia technicians, Sindhu, Dada, and Iwuoha. We resolve appellants' sole issue against them to this extent.

Having resolved appellants' sole issue, we reverse the trial court's order in part and render judgment dismissing appellee's claims against appellants Berrett, Hollingsworth, Bertaut, and Stuart with prejudice. In all other respects, we affirm the trial court's order.

---

[4] In their brief, appellees argue that Groudine's statements are contrary to opinions he has given in deposition testimony. The accuracy of appellee's claims is not an issue before us, nor is whether appellee can prove her claims at trial. We only look at whether Groudine's reports are adequate.

We remand the case to the trial court for further proceedings consistent with this opinion, including assessment of costs and attorney's fees.


                    /Jim Moseley/
                    JIM MOSELEY
                    JUSTICE


120454F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

GAY ACEDO, R.N., JENNIFER
BERTAUT, R.N., ABNOR SINDHU, R.N.,
DEBRA STUART, R.N., JACKIE LARAN,
R.N., ISAAC DADA, EMMANUEL
IWUOHA, BRITT BERRETT, PH.D.,
FACHE, AND SUSAN
HOLLINGSWORTH, R.N., Appellants

No. 05-12-00454-CV     V.

ADRIANE SPRINGS, Appellee

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 08-00671-A.
Opinion delivered by Justice Moseley.
Justices Fillmore and Myers participating.

In accordance with this Court's opinion of this date, the order of the trial court is **AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** that portion of the trial court's order denying the motion to dismiss appellee Adriane Springs's claims against appellants Britt Berrett, Susan Hollingsworth, Jennifer Bertaut, and Debra Stuart. Judgment is **RENDERED** that appellee's claims against appellants Berrett, Hollingsworth, Bertaut, and Stuart are dismissed with prejudice.

It is **ORDERED** that appellants Berrett, Hollingsworth, Bertaut, and Stuart recover their costs of this appeal from appellee Springs.

In all other respects, the trial court's order is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellee Springs recover fifty-five percent of her costs of this appeal from appellants Gay Acedo, Abnor Sindhu, Jackie Laran, Isaac Dada, and Emmanuel Iwuoha.

Judgment entered this 9th day of July, 2013.

/Jim Moseley/

JIM MOSELEY
JUSTICE